RECEIVED
IN LAKE CHARLES, LA

MAR 14 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SOUTHWEST LOUISIANA HEALTHCARE SYSTEM, A NON-PROFIT CORPORATION AND SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION, D/B/A LAKE CHARLES MEMORIAL HOSPITAL | : | DOCKET NO. 05-1299 |
| VS. | : | JUDGE MINALDI |
| MBIA INSURANCE COMPANY, ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

On October 27, 2005 the Court sent Notice to all parties to the above captioned lawsuit that Thad Minaldi, the husband of Judge Patricia Minaldi, is practicing law in a contractual "of counsel" relationship with the law firm of Stockwell, Sievert, Viccellio, Clements, & Shaddock, L.L.P ("SSVCS"). SSVCS currently represents one of the parties to this lawsuit.[1] The parties were instructed to inform the Court of any facts as to whether or not they believe recusal of Judge Minaldi is appropriate in this suit. In response to that Notice, "Defendants AMBAC, MBIA and Cambio's Response to Notice Regarding Propriety of Recusal" was filed. Presiding Judge Minaldi requested that the undersigned hold an evidentiary hearing regarding her recusal. This Court ordered and held an evidentiary hearing on January 18, 2006. Subsequent to the hearing, the parties submitted post-hearing briefs. The issue before us is whether the instant matter includes factual circumstances

---

[1] Currently, the law firm is involved solely as secondary co-counsel on a non-contingent billable hour basis.

distinguishable from those found in *TIC United Corp. v. Covenant Transport, Inc.*, Docket Nos. 2:02CV1024 (Lead), 2:02CV1730 (Member) ("*TIC*") warranting recusal.

Defendants' concern centers around SSVCS's involvement in the dispute between the parties and the possibility that partners in the law firm may be witnesses regarding the occurrence or nonoccurrence of the events alleged in the Complaint -- issues not presented in the *TIC* matter.

The parties to this suit are not questioning in any fashion Judge Minaldi's impartiality, integrity, decorum or how she has conducted the case. In fact, the case is in its infancy and Judge Minaldi has had very minimal involvement or contact with the proceeding. The parties have not questioned the conduct or integrity of Judge Minaldi's husband or the law firm, SSVCS. However, Defendants do raise the issue as to whether any judge should sit on a case, where the law firm representing one of that firm's most important clients has made demand for an award of over $500,000,000.00, and the Judge's spouse has a contractual "of counsel" relationship with that firm. In addition, senior partners and other attorneys were substantially involved in and advised the plaintiffs in their role as primary outside counsel to these long-standing clients in a variety of areas regarding material events and transactions that are directly at issue in the case. Defendants are concerned that SSVCS's involvement and advice could become issues later on in the case.

The following relevant facts were submitted by the parties through a joint stipulation[2]:

(1) Plaintiffs, Southwest Louisiana Healthcare System, Inc. and Southwest Louisiana Hospital Association (collectively, the "Plaintiffs") have been clients of SSVCS since as early as the 1950s.

(2) Plaintiffs have been one of the most important clients of SSVCS for at least several decades, consistently accounting for a significant and material portion of SSVCS revenues.

(3) Plaintiffs annually have ranked as high as No. 1 and no lower than No. 5 in terms of total

---

[2] Additional facts were also submitted through the joint stipulation.

fees paid to SSVCS in each of the last six years.

(10) As counsel for the Plaintiffs, Bob Clements, John Bradford or Ben Guilbeau, Jr. of SSVCS have regularly attended monthly LCMH board meetings at all times relevant to this proceeding.

(11) SSVCS provided and continues to provide legal advice and services to the Plaintiffs with respect to transactions, dealings, and occurrences that are directly at issue in and material to this proceeding; however, Plaintiffs contend that SSVCS was not always acting as "lead" or "primary" outside counsel.

(12) At all times material to the complaints raised by the Plaintiffs against the Defendants (including the Ambac Defendants, MBIA, and Cambio), SSVCS has been present for and was actually involved in events and occurrences that are directly at issue in and material to this proceeding. By way of example only and without any limitation, senior partners and/or other attorneys with SSVCS attended and participated in Board and Committee meetings held by the Plaintiffs during which material acts and decisions on the part of the Plaintiffs that are now directly at issue in this proceeding were prospectively analyzed and/or actually approved or adopted. In addition, senior partners and other attorneys from SSVCS interfaced on a real-time basis with representatives of the defendants (including those of the Ambac Defendants, MBIA and Cambio) with respect to and during the course of material discussions and events that are now directly at issue in this proceeding. Furthermore, with respect to the Plaintiffs' allegations in this proceeding that the defendant bond insurers wrongfully asserted contract rights against the Plaintiffs in connection with the Plaintiffs' performance under certain bond financing agreements, senior partners and other attorneys with SSVCS provided analysis and advice in connection with and/or otherwise participated in actual decisions by the Plaintiffs on a real-time basis with respect to the alleged wrongful assertion of rights by the defendant bond insurers, as well as other alleged wrongful acts committed by these and/or other defendants that form the basis for Plaintiffs' claims in this lawsuit.

(13) Plaintiffs contend that SSVCS did not always serve as "lead" or "primary" outside counsel throughout the entirety of the period relevant to the complaints alleged by the Plaintiffs against the named defendants.

(14) Mr. Thad Minaldi, husband of Judge Patricia Minaldi, has been of counsel with SSVCS since approximately March 1, 2004.

(17) Of the work performed by Mr. Minaldi since the inception of his relationship with SSVCS, approximately 42% of the work performed by Mr. Minaldi has been provided or referred to him by SSVCS.

(19) Pursuant to the terms of Mr. Minaldi's relationship with SSVCS, the firm has discretion over the amount of work it provides or refers to Mr. Minaldi, as well as over the billable rates at which Mr. Minaldi's time is credited and/or billed for that work, although SSVCS is in an arms-length contractual relationship with Mr. Minaldi, and Mr. Minaldi has input with respect both to the

amount of assigned work he accepts and as to acceptable billing rates for that work.

(23) The Agreement between Mr. Minaldi and the Stockwell Firm embodies a tacit if not explicit expectation that the parties will cooperate on marketing their professional services.

Paragraph 23 of the Joint Stipulation states that the agreement between Mr. Minaldi and the Stockwell firm embodies a tacit if not explicit expectation that the parties will cooperate on marketing their professional services. In that regard, the Court notes the last sentence in paragraph 7 of the agreement, which reads as follows: "for the relationship to be workable for both Mr. Minaldi and SSVCS, a fairly significant portion of Mr. Minaldi's work will need to developed by him, with assistance from SSVCS." It must be assumed the parties intended to make this a mutually profitable agreement, and the above quoted portion thereof evidences in the Court's mind, a quite explicit undertaking on the part of SSVCS to aid Judge Minaldi's husband in developing his clientele.

## DISQUALIFICATION OF JUDGE MINALDI UNDER 28 U.S.C. § 455(b)

The above cited section of the statute mandates disqualification of a judge where the judge or his/her spouse has a financial interest in the outcome of the litigation or is acting as a lawyer in the proceeding. The Committee on Codes of Conduct for Judges, in Advisory Opinion No. 58, has advised that one who receives a fixed salary (employee) and is not entitled to share in the firm's profit, and has no interest in the firm's client list or goodwill, has not participated in the preparation or presentation of the case before the Judge, and whose compensation is in no manner dependent upon the result of the particular case before the Judge, does not present a situation mandating recusal. The Fifth Circuit Court of Appeal in *Sensley v. Albritton*, 385 F.3d 591 (5th Cir. 2004), and *Weinberger v. Equifax, Inc.* 557 F.2d 456 (5th Cir. 1977), has endorsed the Committee's interpretation of Canon 3 of the Code of Judicial Conduct as it tracks the language of 28 U.S.C. § 455. This Court observed at the time of the evidentiary hearing that it has some serious problems

with the advisory opinion and with the appellate court interpretations, with the exception of the *Sensley* case. In that case, the Judge's wife was an assistant district attorney in a case which was handled by the district attorney's office. She in no way participated in the case. Her salary was not paid by the district attorney, but by the Parish. Clearly, neither her nor her husband's financial interests could have been affected by the relationship with the district attorney's office.

In the case of an attorney working as a salaried employee of a law firm, the reality of law practice is that every file handled by a law firm has some bearing on the financial interest of everyone in the firm, employees and partners alike. In 27 years of private law practice, the undersigned cannot recall a single year where bonuses were not paid at the end of the year to all employees from the receptionist to the lawyer associates. The amount of that bonus was determined by the amount of profits realized by the total practice of the firm. In years where there was substantial remuneration from contingent fee litigation, these bonuses were not inconsiderable. While there are undoubtably other more graphic examples, this Court is aware of one firm (of which the undersigned unfortunately was not a member) that settled one case for such a huge sum that in addition to paying all the employees sizable bonuses, they treated them and their spouses to an overseas vacation, all expenses paid.

Payments to a spouse or a child, whether it be bonuses or whatever, result in the same benefit to the recipient and in a community property state, such as Louisiana, to the recipient's spouse.[3] Be that as it may, this Court feels constrained to follow what it interprets as higher court authority, and in so doing, cannot find that the agreement between SSVCS and Mr. Minaldi, considering all

---

[3] The writer's conviction in this regard was manifested when he put on his recusal list the name of the firm with which his son-in-law became associated as a <u>salaried employee</u> in 1993 and when he changed firms as a <u>salaried employee</u> in 1999.

5

pertinent circumstances, mandates Judge Minaldi's recusal. Mr. Minaldi has been completely insulated from any participation whatsoever in this case, and for that matter, in any case involving these plaintiffs. He will receive no funds on the profits of SSVCS, but only a percentage of fees from his work on his own cases, and a smaller percentage on work referred to him by the law firm. Even though the lawsuit is for a substantial sum of money, Mr. Minaldi will receive no portion of those funds by way of a percentage interest, bonus, or otherwise. Unlike salaried associates, he does not receive bonuses from the firm, both so far as the record reflects and the agreement states. The fact that a portion of his income (42% or 2.5%) is derived from firm referred work is of no moment under Advisory Opinion No. 58 and the cited Fifth Circuit decisions. This Court holds that 28 U.S.C. § 455(b) does not require recusal.

## DISQUALIFICATION UNDER 28 U.S.C. § 455(a)

Subsection (a) of Section 455 is somewhat broader than (b), requiring that any judge of the United States disqualify himself/herself in any proceeding in which his/her partiality might reasonable be questioned. As stated by the Fifth Circuit Court of Appeals in *Sensley, supra*, "Courts have interpreted this statute to require recusal if a reasonable person, knowing all of the facts, would harbor doubt concerning the Judge's impartiality."

In this case we know the following facts bearing on the issue in question:

(1) There is an "of counsel" agreement between the law firm representing the plaintiffs and the husband of the judge to which the case has been assigned. The law firm provides Mr. Minaldi with an office, secretarial and other support services, and refers work to Mr. Minaldi. Further, the firm advances money to Mr. Minaldi each month, which Mr. Minaldi must in effect earn by generating fees through his work on firm-referred cases as well as cases for which he is solely

responsible. The terms of the agreement recognize a duty on the part of the firm to assist Mr. Minaldi in developing clientele.

(2) Stipulations establish that LCMH is an old and extremely valuable client of SSVCS.

(3) At all times relevant to this case, attorneys Bob Clements, John Bradford, or Ben Guilbeau, Jr. of the SSVCS firm have regularly attended monthly LCMH board meetings. The stipulations establish without contradiction by brief or otherwise, the following:

> Paragraph 12: (" . . . in addition, senior partners and other attorneys with SSVCS interfaced on a real-time basis with representatives of the defendants (including those of the Ambac Defendant, MBIA and Cambio) with respect to and during the course of material discussions and events that are now directly at issue in this proceeding. . . .")

(4) It is suggested by briefs of all defendants that depositions of SSVCS attorneys, particularly Mr. Bradford, will have to be taken in this case and one or more of said attorneys may be required to testify in the case. It is further noted that defendants claim that a request to depose Mr. Bradford prior to the evidentiary hearing on the recusal issue was denied. The original Ambac brief states that the plaintiffs contend that Ambac was responsible for LCMH hiring Wellspring, another defendant in the case, which Ambac denies. Under what circumstances Wellspring was in fact employed, at whose instance, and other issues of the like will clearly be points of contention in this case. Whether and to what extent the Stockwell attorneys may have non-privileged, relevant evidence to present in this case is at this juncture uncertain, but in view of the contention and especially in view of the stipulation that senior partners with the Stockwell firm "interfaced", the meaning of which the undersigned will interpret as "communicated", with representatives of the defendants regarding events directly at issue in this case, their status as deponents is virtually assured.. These are not allegations; these are stipulated facts. Under such facts, it is difficult to imagine how the

7

defendants can avoid taking the depositions of the senior partners who communicated directly with the defendants on the material issues that this case must address. It is equally difficult to imagine how serious questions regarding attorney-client privilege, work product, etc., requiring judicial intervention, will not arise. If in fact counsel from the firm spoke directly with representatives of defendants, which has been stipulated, issues involving waiver of the privilege are also contemplated.

(5) Mr. Bradford, who will be lead counsel for the local firm, but secondary counsel behind the New Orleans firm, felt close enough to Judge Minaldi to request that she act as celebrant at the marriage of his daughter, with which request Judge Minaldi complied.

(6) Mr. Monk, managing partner of the Stockwell firm, stated in no uncertain terms at the evidentiary terms that it was so important to the firm to be able to try cases before Judge Minaldi that they would never have entered into the of-counsel agreement in the first place if Judge Minaldi were subject to recusal because of same. The agreement does state that the firm is willing to provide office space and other overhead expenses to assist Mr. Minaldi in the building of his practice, <u>so long as this agreement does not significantly curtail SSVCS's practice in the local federal court.</u> The undersigned is aware that there is no shortage of federal judges to hear any case in any division in the Western District of Louisiana or elsewhere, for that matter, where the federal courts are involved. It is impossible for the undersigned to imagine how any law firm practicing in the federal courts would be curtailed because the firm is excluded from appearing before one particular judge in the entire system. In the Lake Charles division, the undersigned continues, though on senior status, to accept on random assignment one-third of all the civil cases filed. Routinely, cases where Judge Minaldi has recused herself have been reassigned to the undersigned. With the reduced caseload of

a senior status judge, there is far greater likelihood of a speedy disposition of cases referred to the undersigned. Furthermore, there are three active federal judges in Lafayette, 70 miles away, to whom conflict cases may be assigned, if necessary, but the undersigned can recall no instance when such an assignment has been required.

To reiterate, there is an agreement between SSVCS and Thad Minaldi, husband of Judge Minaldi, to whom this case has been assigned, that was entered into in recognition of "Mr. Minaldi's potential and the potential benefit to SSVCS from a contractual relationship with Mr. Minaldi and his practice." (Agreement 1. B.) The stipulated facts and figures disclose that the implementation of this agreement has inured to the mutual benefit of both parties over the past some 20 months. The firm furnishes Mr. Minaldi valuable office space, secretarial services, and client referral. It also lends him the prestige of the firm's name. Involved in this more than half a billion dollar lawsuit is a client of SSVCS which has remained loyal to the firm since the 1950s. At all times relevant to this lawsuit, representatives of SSVCS attended board meeting of LCMH. Further, the firm's attorneys communicated directly with representatives of defendants with respect to occurrences which are directly at issue in these proceedings. That being the case, it is virtually certain that such counsel will be called upon to disclose facts regarding those communications and are very likely to be called upon to give evidence in the case-in-chief and/or in rebuttal. Mr. Bradford, lead local counsel, a frequent attendee at hospital board meetings, and defendants' prime target as a deponent, felt close enough to Judge Minaldi to have her act as the celebrant at his daughter's wedding. The managing partner of SSVCS proclaimed in open court that despite Mr. Minaldi's proven ability and impressive clientele, if the firm could not have its cases heard before Mr. Minaldi's wife, it would never have entered into the of-counsel agreement.

Those are the established facts with regard to the recusal issue. Would reasonable litigants, the defendant in this mega-buck case, being apprised of all these facts, be reasonable in harboring doubt concerning the Judge's impartiality? This Court, without the slightest hesitancy, must respond in the affirmative, and it will so rule. Despite the strong indication in counsel's brief that the appellate court may reject interlocutory review of this decision, the court in its order of recusal will include the 1292(b) certification in the hope that the Fifth Circuit may be persuaded to bring to a conclusion what is apparently going to be a recurring issue in this Court for the foreseeable future and beyond.

For the forgoing reasons, this Court will order that Judge Patricia Minaldi be recused from further participation in this case and will further certify this ruling in the order which follows for interlocutory review under the provision 28 U.S.C. § 1292(b).

Counsel for defendants have made it abundantly clear that they, through their efforts at recusal, in no way cast any adverse reflection upon Judge Minaldi's competence or ability to conduct her judicial duties as a fair and impartial jurist. The undersigned likewise assures all concerned that he holds Judge Minaldi in the highest regard in all aspects of her judicial functions and esteems the attorneys for all of the litigants in this case, as well as Mr. Minaldi, as exemplary members of the legal profession from both the competence and ethical perspectives.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 14th day of March, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE