RECEIVED
IN LAKE CHARLES, LA

MAY - 4 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| SOUTHWEST LOUISIANA HEALTHCARE SYSTEM, ET AL | : | DOCKET NO. 05-1299 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| MBIA INSURANCE CORPORATION, ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is "MBIA Insurance Corporation's Motion for More Definite Statement and/or to Dismiss" (doc. #44) and "Notice that Defendant Ambac Joins in MBIA Insurance Corporation's Motion for More Definite Statement and/or to Dismiss" (doc. #49), wherein the movers seek to dismiss Plaintiffs' fraud-based claims for inducement, civil conspiracy, "bad faith", and insider trading pursuant to Federal Rules of Civil Procedure 9(b) and 12 (b)(6), and/or require Plaintiffs to provide a more definite statement of their claims against MBIA Insurance Corporation ("MBIA") and Connie Lee Insurance Company; Connie Lee Holdings, Inc.; Ambac Assurance Corporation; and Ambac Financial Group, Inc. (collectively referred to as "Ambac").

## FACTUAL STATEMENT

On July 20, 2005, Plaintiffs, Southwest Louisiana Health Care System and Southwest Louisiana Hospital Association, d/b/a Lake Charles Memorial Hospital (collectively referred to as the "Hospital") filed the instant Complaint for damages and declaratory relief. The Complaint makes the following allegations:

The Hospital's operations are financed in part by approximately $90 million in bonds issued

from 1992 through 2000. Ambac and MBIA are Bond Insurers. Ambac, MBIA and certain Bondholders have sought to renege on their obligations to the Hospital by contriving a default under the bonds. The 60-page, 225-paragraph Complaint avers that Defendants enlisted the assistance of the Bond Insurers' accountants (Pricewaterhouse Coopers) and consultants to provide ostensibly "independent" advice and services to the Hospital. Defendants prompted physicians and other employees to leave, sought to disrupt the Hospital's operations, altered audits, and opposed the use of independent accountants or consultants. The alleged purpose of Defendants' actions was to force the Hospital to sell its facilities or merge with another hospital. The Hospital seeks damages for the parties' bad faith breach of contract and also seeks to protect the Hospital's rights under the bond documents.

## LAW AND ANALYSIS

Ambac and MBIA seek to dismiss the Hospital's fraud-based claims for inducement, civil conspiracy, "bad faith," and insider trading pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) on grounds that the Hospital has failed to state a claim. Alternatively, Ambac and MBIA request that the Hospital provide a more definite statement of their claims against them.

*Fraud-based claims for inducement*

The Hospital entered into the following relevant contracts: (1) Auditor Engagement Contract with Pricewaterhouse Coopers, LLP ("PWC") for accounting services in preparing or auditing the annual consolidated financial statements for fiscal years ending 2001-2002; (2) Consulting Agreements with WellSpring Partners, Ltd. ("WellSpring"), dated October 24, 2002 and May 22, 2003; (3) Consulting Agreement with Cambio Health Solutions, LLC, ("Cambio") dated January 22,

2004; (d) Consulting Agreement between FTI and Trustee, J.P. Morgan, dated 2004.[1] The Hospital maintains that "Defendants' fraud vitiates consent of each of [these] agreements:"[2] The Hospital seeks to rescind its contracts with Defendants, PWC, WellSpring and Cambio.[3] The Hospital is seeking damages and attorney's fees for fraud under Louisiana Civil Code article 1958[4] from Ambac, MBIA, PWC, and Cambio "because the fraud was induced by [these] defendants."[5] The Hospital is also seeking damages and attorneys fees for duress under Louisiana Civil Code article 1964[6] from MBIA, Ambac, Argil-Tarpon, PWC Cambio and WellSpring.[7]

### The Cambio Contract

The Hospital alleges that it was required to engage management consultant, Cambio, because Ambac and MBIA unreasonably refused to consent to the engagement of Ernst and Young and

---

[1] Complaint, ¶ 216.

[2] *Id.*

[3] Complaint, ¶ 217.

[4] Article 1958 provides the following:

> The party against whom rescission is granted because of fraud is liable for damages and attorney fees.

[5] Complaint, ¶ 219.

[6] Article 1964 provides the following:

> When rescission is granted because of duress exerted or known by a party to the contract, the other party may recover damages and attorney fees.
> When rescission is granted because of duress exerted by a third person, the parties to the contract who are innocent of the duress may recover damages and attorney fees from the third person.

[7] Complaint, ¶ 220.

BDK.[8] The Hospital further alleges that "[I]n Jaunary, 2004, the Bond Parties required Lake Charles Memorial Hospital to hire Cambio as a condition of continued financing.[9] "Bond Parties" is not defined. The Hospital alleges that it was fraudulently induced into engaging Cambio through misrepresentations and/or omissions of Cambio and the Bond Parties[10] regarding the qualifications of Cambio and the existence of an alleged relationship between Cambio, defendant Argil-Tarpin[11] and third party, "Triad Hospitals"[12] which the Hospital characterizes as a "conflict of interest."

"Fraud" arising from a breach of contract is generally defined as follows:

> There are three basic elements to an action for fraud against a party to a contract; (1) a misrepresentation, suppression, or omission of true information, (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to a (cause of) the contract.[13]

Fraud may also result from inaction or silence.[14]

Defendants, Ambac and MBIA, maintain that the Hospital fails to offer meaningful details as to "what was given up or obtained by the fraud" and/or what specific facts or circumstances the Hospital believes demonstrate motive or scienter on the part of Ambac and/or MBIA with respect

---

[8] Complaint, ¶ 180.

[9] Complaint, ¶ 187.

[10] The Court will assume the Bond Parties include the Bond Insurers, Ambac and MBIA.

[11] Argil-Tarpin was a bondholder. Complaint, ¶ 44.

[12] Triad Hospitals owns Womens & Childrens Hospital of Lake Charles, a direct competitor of the Hospital.

[13] *Laborde v. Dastugue*, 868 So.2d 228, 233 (La.App. 4th Cir. 2/25/04).

[14] La. Civ. Code art. 1953.

4

to the alleged fraud.[15] Defendants further maintain that the Hospital has failed to plead facts showing that its alleged reliance upon any such unspecified misrepresentations as to Cambio's "qualifications" or purported "conflict of interest" was reasonable or detrimental.

Pleading fraud with particularity requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what [that person] obtained thereby."[16] Articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.[17]

The pleadings as a whole demonstrate that the alleged motive or scienter was to require the Hospital to sell a non-profit Hospital to a private for-profit enterprise, relieving Ambac and/or MBIA of its insurance obligations which would give it economic flexibility at a time when it was financially hard pressed and provide an income windfall to which they would not otherwise be entitled.[18] The Complaint specifies that the "Bond Insurers neither acted at "arms-length" nor in "good faith," and breached their contracts by failing to divulge the nature and extent of the past and on-going relationships between Cambio, Triad and Argil-Tarpon.[19]

The Complaint alleges that the Bond Insurers (Ambac and MBIA) required the Hospital to

---

[15] See *Williams v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997)

[16] *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

[17] *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

[18] Complaint, ¶ 82.

[19] Complaint, ¶ 139.

5

use Cambio.[20] The Complaint further alleges that Cambio, together with its parent, Quorum Health Group was acquired by Triad Hospitals of Dallas.[21] Triad Hospitals owns Women & Children's Hospital of Lake Charles, a direct competitor of the Hospital.[22]

The Hospital alleges that the Bond Insurers demanded new consultants, including a demand for "strategic" plan consultants.[23] The Hospital alleges that Cambio's President admitted that Cambio was not qualified to render strategic management advice.[24] The Complaint does not allege that Ambac and/or MBIA knew that Cambio was not qualified to render this type of advice. The Court is confused as to how Cambio's lack of qualifications caused the Hospital to be fraudulently induced by MBIA and Ambac into entering the Consultant Agreement with Cambio. Furthermore, the Complaint does not specify how Ambac and MBIA's knowledge of a conflict of interest caused the Hospital to be fraudulently induced into entering the Agreement with Cambio. To further buttress the Court's confusion, the Hospital, in its opposition brief concedes that it has not stated a cause of action for "fraud" *per se*.[25] Accordingly, the Court finds that the Complaint lacks sufficient facts to assert an action for fraudulent inducement against Ambac and/or MBIA regarding the Cambio contract.

---

[20] Complaint, ¶ 127.

[21] Complaint, ¶ 132.

[22] Complaint, ¶ 133.

[23] Complaint, ¶ 173.

[24] Complaint, ¶ 174.

[25] Plaintiff's opposition, p. 1.

## The WellSpring Agreement

The Hospital alleges that it was induced by MBIA, Ambac and the Bond Holders into hiring defendant, WellSpring Partners, Ltd. ("WellSpring") as a management consultant, and that WellSpring then "communicated directly with various members of the Hospital's medical staff in a manner that induced unnecessary concern about the [plaintiffs'] financial position ... caus[ing] a number of physicians to cease admitting patients to the Hospital and to begin admitting their patients to the Triad Hospital in Lake Charles.[26] The Hospital maintains that "defendants' fraud vitiates [the plaintiffs'] consent and seeks to rescind the contract.[27] The Court has reviewed the Complaint and finds that it fails to allege facts of fraudulent inducement with sufficient particularity as to Ambac and /or MBIA.

## The Pricewaterhouse Coopers Contracts

The Hospital maintains that defendants' fraud vitiates consent and seeks rescission of their 2001- 2002 contracts with PWC. The Hospital maintains that PWC served as its accountants and auditors from 1998 through 2002, and that MBIA fraudulently concealed the fact that PWC also performed accounting services for MBIA from at least 1998 through 2002.[28] It is alleged that both Ambac and MBIA knew at the time of the bond financing that PWC was not an independent accountant, but concealed this information from the Hospital[29], or held PWC out as providing

---

[26] Complaint, ¶¶ 150-52 & 166.

[27] Complaint, ¶ 216 & 217.

[28] Complaint, ¶ 107.

[29] Complaint, ¶ 108.

independent audits by accountants with no financial ties to any defendant.[30] The Hospital alleges that PWC capitulated to the demands of Ambac and MBIA by issuing a revised opinion report which wrongfully suggested the existence of an Event of Default in its final opinion, dated May 14, 2003. The Hospital asserts that it discovered that PWC was the accountant for MBIA in a Wall Street Journal Publication dated May 2, 2005.[31] However, in its complaint, the Hospital asserts that it could not have ascertained the truth of PWC's conflict of interest without difficulty, inconvenience, or special skill as those terms are used in Article 1954 of the Louisiana Civil Code.[32]

The Complaint fails to allege facts as to how MBIA and/or Ambac fraudulently induced the Hospital into entering the Auditing Agreement with PWC. While MBIA's alleged omission of the fact that PWC was also its accountant may be a breach of contract, this fact alone does not establish that these defendants fraudulently induced the Hospital into entering the Agreements. The Hospital also alleges that MBIA and Ambac perpetuated the use of PWC and refused the Hospital's choice of independent accountants. Again, while this may be a breach of contract claim, it does not establish that either MBIA or Ambac fraudulently induced the Hospital to enter into the Agreement with PWC.

The FTI Agreement

The Hospital alleges that the Defendants demanded that the Hospital pay for a "forensic audit" by FTI (a consulting firm that acquired Cambio). After reviewing the facts alleged with regard to MBIA and Ambac, the Court finds that the Complaint lacks sufficient facts to establish a

---

[30] Complaint, ¶ 146.

[31] Complaint, ¶ 109.

[32] Complaint, ¶ 216.

claim of fraudulent inducement as to these defendants.

As previously stated, the Court notes that in its brief, the Hospital concedes that it has not stated a cause of action for "fraud" *per se*.[33] To satisfy the requirement of Rule 9(b), a plaintiff must provide "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby'" for any and each averment of fraud urged in the plaintiffs' complaint.[34] Furthermore, the requirements of Rule 9(b) apply with respect to the plaintiffs' allegations of fraud as to each individual defendant, such that "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from another cannot meet the requirement of Rule 9(b).[35] Accordingly, the Court will grant the Hospital leave to amend their Complaint and allege sufficient facts, if any they have, with particularity in compliance with Rule 9(b) as to any claims of fraudulent inducement the Hospital may have against Ambac and/or MBIA.

*Has the Hospital stated a claim against MBIA and Ambac for "bad faith"?*

MBIA and Ambac maintain that the Hospital's claims for "bad faith" against them should be dismissed. MBIA and Ambac argue that the claims of bad faith "sound" in fraud and, therefore, must comply with Rule 9(b). Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated.[36] The

---

[33] Plaintiff's opposition, p. 1.

[34] *Tel-Phonic Servs. Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992); see *Williams v. WMX Techs*, at 112 F.3d 177-78 (5th Cir. 1997).

[35] *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F.Supp.2d 821, 824 (N.D. Tex. 2001).

[36] *Lone Star Ladies Investment Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001).

proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.[37]

A bad faith breach of contract is not necessarily fraudulent, but simply an intentional or malicious failure to perform.[38] The Hospital has alleged that the bond contracts required an independent auditor and/or consultant.[39] The Hospital further alleges that PWC was not an independent auditor, and that both Ambac and MBIA knew at the time of the bond financings that PWC was not independent.[40] The Hospital alleges that both MBIA and Ambac concealed this information from the Hospital.[41] The Hospital then alleges that PWC capitulated to the demands of Ambac and MBIA by issuing a revised opinion report which wrongfully suggested the existence of an Event of Default in its final opinion, dated May 14, 2003.[42] As a result of PWC's violating its duty to provide an independent audit, the Bondholder and Bond Insurers required the Hospital to hire a series of "consultants", to which the Hospital objected.[43] Ambac and MBIA directed the choice of consultants, who allegedly proved to be neither objective nor independent.[44] Viewing the allegations made in the Complaint in the light most favorable to Plaintiffs, the Court finds that the

---

[37] *Id.*

[38] *Heirs of Gremillion v. Rapides Parish Police Jury*, 493 So.2d 584, 587 (La.1986).

[39] Complaint ¶ 93.

[40] Complaint, ¶ 107 & 108.

[41] Complaint ¶ 108.

[42] Complaint, ¶ 105.

[43] Complaint, ¶ 105 & 106.

[44] Complaint, ¶ 106.

10

Hospital has alleged sufficient facts against these defendants to assert a bad faith breach of contract claim.

*Has the Hospital properly alleged an action for civil conspiracy?*

MBIA and Ambac maintain that the Hospital's conspiracy to defraud claim does not suffice to state a cause of action. The Hospital maintains that defendants who engage in a conspiracy with other defendants are liable in solido for the damages caused in furtherance of the conspiracy relying on Louisiana Civil Code article 2324(A).[45] Louisiana law does not recognize an independent cause of action for civil conspiracy.[46] The Hospital must plead not just the existence of a conspiracy, but also the existence of an underlying intentional tort planned and actually committed by the alleged conspirators that resulted in damage to the Hospital. A conspiracy to commit fraud is subject to the particularity requirements of Rule 9(b).[47] As previously ruled, the Court has determined that the Complaint lacks sufficient facts to assert a claim against MBIA and Ambac for fraud in the inducement of the contracts. Accordingly, the Hospital will be granted leave to amend their complaint to state a cause of action for a conspiracy to commit an intentional tort that was planned and committed.

---

[45] Article 2324(A) is as follows:

> He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

[46] See *Louisiana v. McIlheny*, 9 So.2d 467, 472 (La.1942).

[47] *Hernandez v. Ciba-Geigy Corp. USA*, 2000 WL 33187524 at *4 (S.D. Tex. Oct. 17, 2000); *In re Ford Motor Co. Vehicle Paint Litigation*, 1996 WL 426548, at *34 (E.D. La. July 30, 1996); see also, e.g., *Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 960 (5th Cir. 1994).

*Has the Hospital properly alleged a securities' claim for insider trading?*

In its brief, the Hospital states that it has not asserted a claim for damages arising under the securities laws. Accordingly, the cause of action for damages from the alleged violation of state or federal securities laws will be dismissed.

## **CONCLUSION**

Based on the foregoing, the motion to dismiss will be granted in part and denied in part. The motion to dismiss as to the bad faith claim will be denied. The motion to dismiss as to the insider trading and claims of a violation of securities' laws will be granted dismissing these claims against Ambac and MBIA. The motion to dismiss as to the claims of fraudulent inducement and conspiracy to commit fraud against Ambac and MBIA will be denied at this time; however, the motion for a more definite statement will be granted and the Plaintiffs will be given 15 days from the date of this order to file an amended complaint asserting with particularity in compliance with Rules 8 and 9(b) of the Federal Rules of Civil Procedure a claim, if any they have, for fraudulent inducement and/or conspiracy to commit fraud against these defendants. Failure to properly assert such claims will result in a dismissal of these claims against Ambac and MBIA.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 4th day of May, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

12