RECEIVED
IN LAKE CHARLES, LA
AUG 3 1 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SOUTHWEST LOUISIANA HEALTHCARE SYSTEM, ET AL | : | DOCKET NO. 05-1299 |
| VS. | : | JUDGE TRIMBLE |
| MBIA INSURANCE CORPORATION, ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is "MBIA Insurance Corporation's Motion to Dismiss Plaintiffs' Fraud, Conspiracy, Punitive Damage, and Duress Claims" (doc. #117) and "Defendants Connie Lee Insurance Company; Connie Lee Holdings, Inc.; Ambac Assurance Corporation; and Ambac Financial Group's Notice of Joinder in MBIA Insurance Corporation's Motion to Dismiss Plaintiffs' Fraud, Conspiracy, Punitive Damage, and Duress Claims" (doc. #118). Pursuant to a Memorandum Ruling and Judgment dated May 4, 2006 granting in part Defendants' Motion for More Definite Statement and/or Motion to Dismiss, Plaintiffs filed an Amended and Supplemental Complaint (doc. #116) on May 18, 2006. These defendants now move this Court under Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss the Plaintiffs' restated claims of fraud, civil conspiracy to defraud, punitive and/or treble damages, and legal duress.

## FACTUAL STATEMENT

A factual statement was presented in the Memorandum Ruling dated May 4, 2006 and will not be restated herein. Defendant, MBIA Insurance Corporation ("MBIA") issued a bond insurance policy in favor of the registered owners of the Series 1993 Bonds, pursuant to which MBIA unconditionally

and irrevocably guaranteed the Hospital Service District's[1] payment of all principal and interest due under the terms of the bonds. MBIA had no involvement in the remaining bond financing transactions at issue in this lawsuit. Defendant, Connie Lee Insurance Company, Connie Lee Holdings, Inc., Ambac Assurance Corporation, and Ambac Financial Group, Inc. (collectively referred to as "Ambac") insured the Series 1992A bonds at issue in this litigation.[2] The remainder of the bonds were issued in 2000 by the Louisiana Public Facilities Authority.

## LAW AND ANALYSIS

In the May 4, 2006 Judgment and Memorandum Ruling, the Court held that Plaintiffs failed to plead particularized allegations of fact sufficient to state a cause of action against MBIA and Ambac for fraud with respect to third-party contracts,[3] and a conspiracy to commit fraud. Plaintiffs filed an amended complaint to replead their fraud and fraudulent conspiracy claims against MBIA and Ambac. MBIA and Ambac maintain that Plaintiffs have failed to plead facts in their amended complaint sufficient to state cognizable causes of action against these defendants for fraud, conspiracy to defraud and legal duress. MBIA and Ambac further maintain that Plaintiffs' claim for treble damages under Tennessee law should be dismissed as well. Plaintiffs maintain that they have alleged sufficient facts

---

[1] The Hospital Service District loaned Southwest Louisiana Health Care System ("SLHCS") the proceeds generated from the sale of the Series 1993 bonds pursuant to a loan agreement dated January 1, 1993.

[2] The proceeds from the 1992 bond transaction were loaned by the Hospital Service District to SLHCS pursuant to the terms of the 1992 Loan Agreement.

[3] The relevant contracts are as follows:
(1) Two (2) PriceWaterHouse Coopers, LLP accountant/auditor engagements provided to Plaintiffs for fiscal years ending December 31, 2001 and December 31, 2002, respectively,
(2) Two (2) WellSpring Partners, Ltd. consulting agreements with Plaintiffs dated October 24, 2002 and May 22, 2003,
(3) A Cambio Health Solutions, LLC consulting agreement dated January 22, 2004,
(4) A 2004 forensic accounting and consulting agreement between the Trustee and FTI.

for fraud, conspiracy to defraud, legal duress, and punitive damages under Tennessee, Texas and/or New York law.

*Conspiracy to defraud*

MBIA and Ambac maintain that Plaintiffs' conclusory allegations as to a conspiracy among MBIA, Ambac and others to defraud Plaintiffs are insufficient under Rule 9(b). These defendants argue that Plaintiffs offer no concrete facts with respect to the terms of the supposed agreement amongst MBIA, Ambac and other defendants to force Plaintiffs to sell out or merge, and no details at all as to MBIA and Ambac's supposed role in the alleged conspiracy. MBIA and Ambac further argue that Plaintiffs offer no concrete facts from which one could reasonably infer that these defendants would have anything other than entirely innocent, if not completely legitimate reasons for seeking Plaintiffs' recapitalization through a sale or merger.

"[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referral to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated."[4] Federal Rule of Civil Procedure 9(b) states; "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of the mind of a person may be averred generally."[5] Rule 9(b) requires the who, what, when, where and how to be laid out.[6] Rule 9(b) further requires "allegations of the particulars of time, place and contents of the false representations as well

---

[4] *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1998).

[5] Fed. Rule. Civ. P. 9(b).

[6] *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified in part on other grounds, on reh'g, and reh'g en banc denied*, 355 F.3d 356 (5th Cir. 2003).

3

as the identity of the person making the representations and what he obtained thereby."[7]

Louisiana Civil Code article 2324(A) provides that, "[h]e who conspires with another to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such an act." Louisiana Civil Code article 1953 provides that, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

Plaintiffs argue that they have pled specific facts and circumstances to support a cause of action against MBIA and Ambac – both individually and as a jointly-liable co-conspirator. Plaintiffs allege in ¶ 243 of their amended complaint that the:

> ... "Report of Independent Accountants" dated May 14, 2003, signed by "PriceWaterhouseCoopers LLP", was false and misleading with respect to the representation that "the Restricted Group did not obtain the prescribed debt service ratio as defined in Section 7.9 - Rate Covenants of the Series 1992A, Series 1993 and Series 2000 loan agreements for the year ending December 31, 2002." *(LCMH 006285-LCMH 006298)*

Plaintiffs then allege in ¶ 244 of their amended complaint that "this representation was false as evidenced by, among other things, the "April __, 2003" Preliminary Opinion issued by PwC which indicates that the debt service ratio was satisfied. *(LCMH 006285-LCMH 006298)*" Plaintiffs allege that they believe that at the time the Final Report was issue by PwC on May 14, 2003, representatives of AMBAC, including Stephen Rochford, Stephen Rofsky, and Bob Yagi, and representatives of MBIA, including Thomas Saccardi and Bettina Whyte, knew that the representations were materially false, and that the debt service ratio had been satisfied.[8] In their amended complaint, Plaintiffs have

---

[7] *Id.* (internal quotation marks omitted).

[8] Plaintiffs' Amended and Supplemental Complaint, ¶ 245.

4

pled additional facts which they allege can be reasonably inferred from the facts and circumstances.

Plaintiffs argue that MBIA and Ambac were attempting to secretly and subversively, in concert and conspiracy with one another, engineer a sale or merger of the Hospital.[9] Plaintiffs assert that they have stated with particularity those known facts and circumstances from which MBIA and Ambac's fraud may be inferred or presumed.[10]

Plaintiffs allege that:

> the final false and misleading Report was issued by PwC, on May 14, 2003, in concert and conspiracy with AMBAC, MBIA, Argil-Tarpon and others not yet known to engineer a sale of the Hospital, by: (1) forcing the Hospital to expend time, money and energy to accommodate the demands of the bond Insurers or others to cure the alleged claims of "default"; (ii) forcing the Hospital to retain consultants who would interfere with the smooth and efficient operations of the Hospital; (iii) raise questions about the solvency of the Hospital and, (iv) forcing the Hospital to hire consultants who would provide competitors and the Bond Insurers with confidential trade secrets which could be exploited in negotiations for the sale of the Hospital.[11]

In their Complaint, Plaintiffs allege that the Trustee breached the Trust Agreement because it had a duty to make a reasonable inquiry into whether or not PwC was in fact independent.[12] Plaintiffs allege that PwC had been their accountant from 1989 until 2002, and that PwC had been MBIA's auditor from 1998 to 2002. Plaintiffs further allege that PwC capitulated to the demands of its other clients, Ambac and MBIA, by revising the earlier opinion and suggesting the existence of an Event of Default in their Final Report.[13] Plaintiffs assert that PwC had never changed a Preliminary Report in

---

[9] Plaintiffs' Amended and Supplemental Complaint, ¶¶ 243-246.

[10] Plaintiffs' Amended and Supplemental Complaint, ¶¶ 226-258.

[11] Plaintiffs Amended and Supplemental Complaint, ¶ 246.

[12] *Id.*

[13] Plaintiffs' Complaint, ¶ 105.

the past, thus, one must assume that it was at the behest of Ambac and/or MBIA. Other than this assumption, there are no facts alleged that Ambac and/or MBIA improperly coerced or persuaded PwC to change its preliminary opinion.

"A plaintiff has an obligation to explain what is untrue about each of the challenged statements and cannot merely quote a statement and assert that it is untrue."[14] "Plaintiffs may not proffer the different financial statements and rest. [They] must plead some fact suggesting that the difference is attributable to fraud."[15] The Plaintiffs fail to allege how or why the PwC Final Report was materially false. Furthermore, the Plaintiffs have not alleged that the Final Report was withdrawn or amended because it was materially false, or which accounting or auditing standards were applied and how they were violated.[16] Plaintiffs' conclusions and assumptions that Ambac and/or MBIA conspired to have PwC render a materially false Final Report on May 14, 2003 have no factual basis to support them in Plaintiffs' Complaint, as amended.

On December 19, 2003, Ambac (Connie Lee) and MBIA sent a letter to J.P. Morgan, the Trustee, directing the Trustee to provide a notice of continuing default. A Notice of Default was issued by the Trustee on December 31, 2003. It is alleged by Plaintiffs that one of the reasons for the default was the "User's [Hospital] failure to use a management consultant acceptable to the Bond Insurers."[17]

Plaintiffs allege that Ambac and MBIA refused to approve of the Hospital's use of either Ernst

---

[14] *Loan v. FDIC*, 717 F.Supp. 964, 967 (D.Mass. 1989).

[15] *DiLeo v. Ernst & Yyoung*, 901 F.2d 624, 627 (7th Cir.), *cert. denied*, 498 U.S. 941 (1991).

[16] *TCF Banking & Savs., F.A. v. Arthur Young & Co.*, 706 F.Supp. 1408, 1412 (D.Minn. 1988)(allegations that auditors fraudulently understated debt reserves, though providing time, place, and manner of alleged fraud, held insufficient under Rule 9(b); complaint needs to specify which accounting or auditing standards applied and how they were violated)

[17] Plaintiffs' original Complaint, ¶ 165.

& Young or BKD, two nationally-recognized independent management consulting firms. Plaintiffs further allege that Ambac recommended that the Hospital use Cambio as a management consultant. Cambio was acquired by Triad Hospitals of Dallas who owns Women & Children's Hospital of Lake Charles, a direct competitor of the Hospital. There is no allegation that Ambac knew of Cambio's and Triad Hospitals' ownership relationship.

On August 12, 2004, Cambio made a strategic recommendation to the Bondholders, advocating that the Hospital be sold. Cambio's President, Tom Singleton, later declared that Cambio was not competent to render strategic management advice. The Hospital has not alleged that Cambio's recommendation was deceptive or fraudulent, nor why or how it was deceptive or fraudulent. The Hospital has not alleged that MBIA and/or Ambac knew that Cambio was not qualified to render strategic management advice.

An audit was performed by P&N for the FYE 2003. P&N issued annual certificates of "NO DEFAULT" to the Trustee. Plaintiffs allege as fact that a letter dated December 29, 2004 from Many Emamzadeh of Reed Smith to P&N requested that P&N amend its 2003 No Default Certificate.[18] That letter is not attached to the Amended and Supplemental Complaint. Then, Plaintiffs allege as fact that in a letter to Many Emamzadeh, dated February 7, 2005, Kantrow Spaht, counsel for P&N, refused to "update or revise" its 2003 No Default Certificate for the FYE 2003.[19] This letter is attached to the Amended and Supplemental Complaint. In the February 7, 2005 letter, Many Emamzadeh inquired if "P&N intended to update its 2003 No Default Certificate in light of certain new information that you

---

[18] Plaintiffs' Amended and Supplemental Complaint, § u of ¶ 233.

[19] Plaintiffs' Amended and Supplemental Complaint, § v of ¶ 233.

7

state was provided by Hospital management to the bondholders and insurers."[20] P&N did not update its 2003 No Default Certificate because the events occurred after the certification was issued therefore, they were under no obligation to do so.[21] Plaintiffs have failed to plead any facts as to why or how these letters were part of a conspiracy to defraud. Plaintiffs have failed to plead facts as to why Many Emamzadeh's inquiry as to whether or not P&N intended to amend its 2003 No Default Certificate based on new information provided by the Hospital, was fraudulent or part of a conspiracy to defraud.

> A proper allegation of a conspiracy to commit fraud in a civil complaint must set forth with certainty facts showing particularly: (1) what a defendant or defendants did to carry the conspiracy into effect; (2) whether such acts fit within the framework of the conspiracy alleged; and (3) whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff. In short, the complaint must allege some factual basis for a finding of a conscious agreement among the defendants.[22]

The Court has reviewed Plaintiffs' allegations and finds that Plaintiff has failed to allege with particularity specific facts in compliance with Federal Rule of Civil Procedure 9(b) to establish a conspiracy to defraud. Plaintiffs have alleged no facts to establish that Ambac and MBIA's recommendation, suggestions, opinions and actions were nothing more than business decisions concerning the risks they assumed as insurers to the bondholders. Plaintiffs have failed to allege facts as to how and why Ambac and MBIA's acts were fraudulent. Plaintiffs have failed to allege how or why the Final Reports were materially false, or why and how these reports violated any accounting principles or standards. Plaintiffs have failed to allege particularized facts that these defendants conspired with one another to commit a fraud.

---

[20] LCMH 001457-001458, attached to Plaintiffs' Amended and Supplemental Complaint.

[21] LCMH 001457-001458, attached to Plaintiffs' Amended and Supplemental Complaint.

[22] *Odyssey Re (London) Ltd. v. Sterling Cooke Brown Holdings, Ltd.*, 85 F.Supp.2d 282, 298-99 (S.D.N.Y 2000) (internal quotations, citations, and footnotes omitted).

*Fraud*

Plaintiffs allege that Ambac and MBIA committed fraud because of its purported role in fraudulently inducing Plaintiffs' contracts with PwC, Cambio, and WellSpring, as well as for MBIA's alleged "fraudulent inducement" of the third-party contract between FTI and the Trustee. Ambac and MBIA argue that they had no duty to speak or to disclose information, citing *Green v. Gulf Coast Bank*,[23] *Freidberg v. Belco Energy LP*,[24] *America's Favorite Fried Chicken Co. v. Copeland*,[25] and *Dorsey v. NorthernLife Ins. Co.*[26] See also *Wilson v. Mobil Oil Corp.*[27] Plaintiffs argue that an affirmative duty of disclosure is not limited to cases wherein a contractual and fiduciary relationship exists, citing *Kadlec Med. Center v. Lakeview Anesthesia Assoc.*[28] Plaintiffs suggest that there was a relationship with MBIA and Ambac because they were a third party beneficiary of the contracts due to the obligations undertaken by Plaintiffs under the loan agreements.

In support of their allegations of fraud Plaintiffs assert the following conduct: Defendants chose to avail themselves of the Trust Indentures and Loan Agreements; Defendants chose to adopt PwC's erroneous pronouncement of "default;" Defendants chose to recommend Cambio and Wellspring and approve those contracts; Defendants chose not to approve Ernst & Young, BDK or P&N; Defendants chose in December 2003 to instruct the Trustee to issue a notice of continuing default; and Defendants

---

[23] 592 So.2d 630, 632 (La.1992);

[24] 237 F.3d 631, 2000 WL 1701707 at *1 (5th Cir. 2000).

[25] 130 F.3d 180, 186 (5th Cir. 1997).

[26] No. Civ. A. 04-0342, 2005 WL 2036738, at *18 (E.D. La. Aug. 15, 2005).

[27] 940 F.Supp. 944, 955 (E.D. La. 1996) ("[A]bsent a duty to disclose, silence with respect to the details of a business transaction does not constitute fraud.")

[28] No. Civ. A. 04-0997, 2005 WL 1309153 at *7 (E.D. La. May 19, 2005).

chose, in September of 2004, to issue a letter referencing a "fragile financial condition" and urging strategic consulting, merger, or sale.[29]

Plaintiffs' allegations, even without deciding if these Defendants had a duty to speak, fail to plead with particularity why and how this particular conduct was fraudulent. Again, while certain alleged omissions of Ambac and MBIA may result in a breach of contract claim, if proven, the Court finds that the Complaint is lacking in specific facts as to how and why the alleged actions or omissions by Ambac and MBIA constitute fraud.

*Duress*

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion, the Court must accept the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in plaintiff's favor.[30] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."[31] "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[32] "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[33]

---

[29] Plaintiffs' Memorandum in Opposition, pp. 14-15.

[30] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Fernandez-Montes v. Allied Pilots Ass'n*. 987 F.2d 278, 284 (5th Cir. 1993); *Brumberger v. Sallie Mae Servicing Corp.*, 2003 WL 1733548, *1 (E.D. La. March 28, 2003).

[31] *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

[32] *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

[33] *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Plaintiffs maintain that whether Ambac and/or MBIA were legally entitled to threaten "default" based on a false and misleading auditor's report which they themselves conspired to have created is a factual question which cannot be resolved on the pleadings at this time. Plaintiffs' claim for duress against MBIA and/or Ambac is with respect to Plaintiffs' contracts with Cambio, WellSpring, PwC, and the Trustee's independent contract with FTI.

Pursuant to Louisiana Civil Code article 1959, "[c]onsent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." The redactors of article 1959 provide the following definition of duress:

> This article substitutes the term "duress" for "violence or threats," the expressions used in the source Articles. According to Black's Law Dictionary (Rev. 4th ed. 1968), duress means: "Unlawful constraint exercised upon a man whereby he is forced to do some act that he otherwise would not have done. It may be either 'duress of imprisonment,' where the person is deprived of his liberty in order to force him to compliance, or by violence, beating, or other actual injury, or duress per minas, consisting in threats of imprisonment or great physical injury or death. Duress may also include the same injuries, threats, or restraint exercised upon the man's wife, child, or parent." For the drafters of the Restatement of the Law, Second, Contracts, duress takes two forms. In one, a person physically compels conduct that appears to be a manifestation of assent by a party who has no intention of engaging in that conduct. The result of this type of duress is that the conduct is not effective to create a contract. In the other, a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent. The result of this type of duress is that the contract that is created is voidable by the victim. This latter type of duress is in practice the more common and more important. Restatement, Second, Contracts, § § 174 and 175 (1981). In sum, "duress" is a word of art or technical word in the English language which expresses exactly what is meant by "violence or threats" in C.C. arts. 1850-1952 (1870).

The revision comments to Louisiana Civil Code article 1959, provide that legal duress can occur when "a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent."[34]

---

[34] La. Civ. Code art. 1959, Revision comments–1984, Comment (b)(West 2006).

11

Plaintiffs have failed to allege any improper threats made by MBIA and/or Ambac concerning the 2001 and 2002 PwC contracts, the 2002 and 2003 WellSpring contracts, the Cambio consulting agreement and/or the Trustee and FTI agreement. Plaintiffs have alleged that Ambac and/or MBIA proposed, perpetuated the use of, approved, recommended, or approved and accepted such contracts. This falls short of an allegation of duress. Accordingly, Plaintiffs have failed to state a cognizable cause of action against Ambac and/or MBIA for duress and this claim will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

*Punitive Damages*

Plaintiffs maintain that they have provided sufficient facts and circumstances to support their claims for treble or punitive damages against Ambac and/or MBIA under Tennessee, Texas and/or New York law. Plaintiffs argue that the punitive damages may be awarded because the Cambio Consulting Agreement, to which neither Ambac nor MBIA are a party, provides that "[t]he law of the State of Tennessee shall govern this Agreement . . ."[35] As to Texas law applying, prior to entering into a consultant agreement with Cambio, SLHCS and the Hospital required Cambio to execute a Confidentiality Agreement. The Confidentiality Agreement provides that it "shall be governed by the law of the State of Texas." Neither Ambac nor MBIA are a party to that agreement. Plaintiffs argue that New York law could apply because defendant MBIA is a New York corporation with its principal place of business in New York.

"A federal court sitting in diversity applies the conflict-of-law rules of the state in which it sits."[36] Louisiana Civil Code article 3546 provides the following regarding punitive damages:

---

[35] Plaintiffs' Memorandum in Opposition, Exhibit H, p. 7.

[36] *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003) citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 596 (1941).

>Punitive damages may not be awarded by a court of this state unless authorized:
>(1) By the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or
>(2) By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled.

Louisiana Civil Code article 3547 provides for exceptional cases as follows:

>The law applicable under Articles 3543-3546 shall not apply if, from the totality of the circumstances of an exceptional case, it is clearly evident under the principles of Article 3542, that the policies of another state would be more seriously impaired if its law were not applied to the particular issue. In such event, the law of the other state shall apply.

All of the alleged injurious conduct and resulting injury occurred in Louisiana. Accordingly, Plaintiffs have failed to allege any facts that would support a punitive damages claim against Ambac and/or MBIA under either New York, Tennessee or Texas law.

## CONCLUSION

Based on the foregoing, the motions to dismiss filed by defendant, MBIA Insurance Corporation (doc. #117) and defendants, Connie Lee Insurance Company, Connie Lee Holdings, Inc., Ambac Assurance Corporation, and Ambac Financial Group (doc. #118) will be granted dismissing Plaintiffs' claims of conspiracy to defraud and fraud for lack of particularized facts as required by Federal Rules of Civil Procedure 9(b), and Plaintiffs' claims of duress and punitive damages for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6).

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 21st day of August, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

13